IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

JAMES K. BARNFIELD,

    Petitioner,

  v.

A.P. KANE, Warden,

    Respondent.
_____/

No. C 06-0510 CW (PR)

ORDER DENYING
PETITION FOR WRIT OF
HABEAS CORPUS

    Petitioner James Barnfield, a state prisoner, has filed a <u>pro se</u> petition for a writ of habeas corpus pursuant to title 28 U.S.C. § 2254, challenging as a violation of his constitutional rights the denial of parole by the California Board of Parole Hearings (Board).[1]  Respondent Anthony Kane has filed an answer.  Petitioner has filed a traverse.  Having considered all of the papers filed by the parties, the Court DENIES the petition.

BACKGROUND

    On January 29, 1982, Petitioner was in a Ventura County motel room drinking alcohol with his brother, his friend James Nolan and other individuals.  Petitioner and Nolan started arguing and the dispute turned violent.  Petitioner and his brother beat Nolan, allegedly because Nolan knew Petitioner had committed several armed robberies earlier and he and his brother wanted Nolan to keep silent.  After the beating, a witness to the fight overheard Petitioner and his brother discussing how they would have to take care of Nolan because Nolan knew Petitioner had committed the robberies.  Following the fight, those in the motel room continued

---

[1] The Board of Prison Terms was abolished effective July 1, 2005, and replaced with the Board of Parole Hearings.  Cal. Penal Code § 5075(a).

to drink.

Later that evening, Petitioner and his brother invited Nolan to accompany them to another party. The witness never saw Nolan again. Several hours later, Petitioner and his brother returned to the motel room and picked up the witness. They drove to a coin-operated car wash, where the witness observed Petitioner washing what appeared to be dried blood from his trunk. The witness observed that Petitioner's pants were stained with blood. Later that day, Petitioner told the witness that he had shot Nolan in the head and placed him in his car's trunk, and that after opening the trunk later and discovering that Nolan was still breathing, he shot Nolan in the head again. Petitioner also told the witness that he had buried Nolan's body with his brother's aid. Nolan's family recovered his body several days later. Petitioner and his brother fled to Sacramento, where they were arrested on February 15, 1982.

On September 22, 1982, Petitioner plead guilty to one count of second-degree murder with a gun use enhancement in exchange for the prosecution's agreement to drop other counts. The trial court sentenced Petitioner to a term of seventeen years to life with the possibility of parole. Petitioner was received into the California Department of Corrections and Rehabilitation on September 8, 1982, and his minimum parole eligibility date was December 25, 1992.

In 1997, Petitioner received a disciplinary violation report for drug trafficking. (Resp't Ex. 2 at 32.) He has received four counseling chronos since 2001, including three for failing to report to work. (Id. at 47.) Petitioner conceded he has a substance abuse problem and began attending Alcoholics Anonymous (AA) meetings in 2002. (Id. at 52.)

Petitioner has completed various vocational courses in prison, including welding, small engines and air frame. (Id. at 33-34.) He has worked at the Prison Industry Authority in textiles since 2001. (Id.) In August and December of 2004, Petitioner completed a program on controlling anti-social behavior. (Id. at 37.) Petitioner was accepted into the Impact Program, where he met with victims of crime. (Id. at 38.) Finally, Petitioner helped start a group for other inmates who, like himself, were veterans of the armed forces. (Id. at 39.)

On February 14, 2005, Petitioner attended his seventh parole suitability hearing before the Board. In addition to Petitioner's prison record, the Board considered the Probation Officer's report, the sentencing transcript, various counselors' and Board reports, and Petitioner's psychiatric reports. (Id. at 12.) The Board noted that Petitioner had been cited three times for non-drug related Vehicle Code violations between 1979 and 1981. (Id.)

The Board reviewed Petitioner's personal background, noting that his parents separated when he was five and that his father died in 1992. (Id. at 14.) Petitioner's father had an alcohol problem, and his mother had a gambling problem. (Id. at 16.) Petitioner testified that he abused drugs and alcohol during his adolescent years and dropped out of high school in the eleventh grade. (Id. at 16-17.) (He subsequently earned his GED while incarcerated at Deuel Vocational Institution in 1984. (Id. at 17.)) Petitioner joined the armed forces at seventeen and served for two years before being discharged for "black-marketing." (Id.)

Petitioner testified that he intended to live with his sister in Kern County if the Board granted him parole. (Id. at 19.) A

3

letter from his sister confirmed that arrangement.  (Id. at 21.)
His sister was part-owner of a smog certification business, and her
partner wrote the Board to confirm that Petitioner could work there
if paroled.  (Id. at 19-22.)  Petitioner's mother wrote the Board,
pleading that she was "77 years old and need[ed] to be able to
spend time with [her] son."  (Id. at 21.)  His niece also submitted
a letter asking the Board to grant Petitioner parole.  (Id. at 23.)

The Board reported that the Simi Valley Police Department and
the Ventura County District Attorney had both submitted oppositions
to granting Petitioner parole.  (Id. at 24-31.)  The District
Attorney's letter opposing parole stated in part:

> Based on the best evidence in this case, the Inmate
> executed Nolan because he feared Nolan would reveal to
> police the Inmate and his brother's participation in
> multiple armed robberies.  The Inmate's failure to
> acknowledge the extent of his participation in this
> commitment crime and his effort to conjure a self-serving
> explanation of the murder is a clear expression that this
> Inmate is both unwilling and incapable of returning to
> society.  This crime involved extreme violence in that
> the Inmate executed Nolan in cold blood, preceded by
> beating him for approximately half-an-hour.

(Id. at 29-30.)  The District Attorney suggested that parole be
denied because of the "violent and callous" nature of the
commitment offense, Petitioner's "failure to acknowledge his
culpability in the commitment crime," and Petitioner's "lack of any
parole plan."  (Id. at 26.)

Nolan's next-of-kin also appeared at the hearing, and his
sister pleaded with the Board to deny Petitioner parole.  (Id. at
48-50.)

The Board considered a report assessing Petitioner's
dangerousness as "moderate to possibly low" if he remained sober.
(Id. at 33.)  The Board also noted a psychiatric report from

4

January, 2001 which indicated that Petitioner's violence potential was "average" for a Level II inmate. (Id. at 36.)

After deliberation, the Board concluded that Petitioner was not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released. (Id. at 51.) The Board issued a two-year denial of parole. (Id.) In support of its decision, the Board cited the "cruel fashion" with which Petitioner killed Nolan and noted "the motive for this crime is really inexplicable." (Id.) The Board also stated that Petitioner had not sufficiently participated in self-help programming and had an "unstable" social history that included drug and alcohol abuse. (Id.) Given that Petitioner's psychiatric evaluation stated his violence potential was higher than average if he abused alcohol, the Board voiced concern that Petitioner only started attending AA in 2002. (Id. at 52.) The Board also was influenced by the testimony of Nolan's sister as well as the letters from the Ventura County District Attorney and Simi Valley Chief of Police. (Id.)

The Board recommended Petitioner continue to participate in self-help sessions and remain "clean and sober." (Id. at 53.) The Board felt Petitioner's improvements were relatively recent and that he should "demonstrate an ability to maintain those gains over an extended period of time." (Id.) The Board concluded by commending Petitioner on his recent progress, encouraging him to remain "disciplinary free," and ordering a new psychological evaluation to be completed prior to the next parole hearing. (Id. at 54-56.)

Petitioner filed a petition for a writ of habeas corpus with

5

the Ventura County Superior Court challenging the Board's decision and asserting that the denial of parole violated his plea agreement. On July 8, 2005, the superior court denied the petition. On September 20, 2005, the California Court of Appeal summarily denied his petition. On November 30, 2005, the California Supreme Court summarily denied his petition for review. Petitioner now seeks federal habeas relief in this Court.

## LEGAL STANDARD

Because this case involves a federal habeas corpus challenge to a state parole eligibility decision, the applicable standard is contained in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). McQuillion v. Duncan, 306 F.3d 895, 901 (9th Cir. 2002).

Under AEDPA, a district court may not grant habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000). A federal court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1).

Respondent concedes that Petitioner has exhausted his state remedies by filing a petition for review in the California Supreme Court. Where, as here, the highest state court to reach the merits issued a summary opinion which does not explain the rationale of

6

its decision, federal court review under § 2254(d) is of the last state court opinion to reach the merits. Bains v. Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000). In this case, the last state court opinion to address the merits of Petitioner's claim is the opinion of the Ventura County Superior Court.

## DISCUSSION

I.   Due Process Claim

Petitioner asserts that his due process rights were violated by the Board's decision to deny parole because that decision was not supported by "sufficient reliable evidence." (Pet. at 15.) Petitioner's claim fails.

Because California prisoners have a constitutionally protected liberty interest in release on parole, they cannot be denied a parole date without the procedural protections necessary to satisfy due process. McQuillion, 306 F.3d at 902. A parole board's decision must be supported by "some evidence" to satisfy the requirements of due process. Superintendent v. Hill, 472 U.S. 445, 455 (1985); McQuillion, 306 F.3d at 904; Morales v. California Dep't of Corrections, 16 F.3d 1001, 1005 (9th Cir. 1994), rev'd on other grounds, 514 U.S. 499 (1995). The evidence underlying the board's decision must have some indicia of reliability. McQuillion, 306 F.3d at 904; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987).

The Ventura County Superior Court concluded that Petitioner did not show that "the decision of the Board of Prison Terms was not supported by substantial evidence." (Resp't Ex. 5, Ventura County Superior Court Minute Order dated July 8, 2005.) The Board's decision was supported by "some evidence" and as such the

7

California state courts' denial of Petitioner's claim was not contrary to, or an unreasonable application of, controlling federal law, nor based on an unreasonable determination of facts. See 28 U.S.C. § 2254(d).

In denying Petitioner's request for parole, the Board first cited as evidence the exceptionally cruel and seemingly inexplicable nature of the commitment offense. The Board noted that Petitioner methodically murdered Nolan with gunshots to the head and added:

> And just to add insult to injury, the Inmate then attempted to cover up the scene, cover up the crime rather, by washing the vehicle, by burying Mr. Nolan's body in Northern California. Clearly, the crime shows he lacked regard for the life and suffering of another.

(Resp't Ex. 2 at 51.)

The Board also cited as evidence Petitioner's unstable social history and need for more therapy before release. (Id. at 52.) The Board noted that Petitioner's past psychological assessment indicated his risk of violence increased significantly if he abused drugs and alcohol. (Id.) Taking note that Petitioner was addicted to alcohol and had a history of taking "marijuana, PCP, cocaine, [and] heroin," the Board concluded that "the Inmate has not yet participated in sufficient levels of self-help in that he has been an ongoing participant in AA since 2002." (Id.) The Board was pleased with Petitioner's new-found commitment to AA, but noted it was relatively recent and stressed the importance of his continuing to "develop the skills that will allow him to remain clean and sober." (Id. at 53.)

Finally, the Board cited the oppositions of the Ventura County District Attorney, Simi Valley Police Department and Nolan's

sister. (Id. at 54.)

Petitioner claims that, under the reasoning of Biggs v. Terhune, 334 F.3d 910, 915-16 (9th Cir. 2003), in denying parole the Board improperly relied on static factors that do not outweigh Petitioner's "extended years of positive behavior and his demonstrated rehabilitation," particularly in light of his clean criminal record prior to his commitment offense. (Pet. at 18-19.)

In Biggs, the Ninth Circuit found that parole denial based solely on the gravity of the commitment offense can initially satisfy due process requirements, and that the "some evidence" standard could be satisfied by the Board's consideration of the gravity of the offense. However, in dicta, the Biggs court held that courts may also consider the parole board's decision-making process over time: "The Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered. . . . A continued reliance in the future on an unchanging factor . . . runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Biggs, 334 F.3d at 916-17.

Petitioner's reliance on Biggs is misplaced. The Board relied on more than the single "unchanging factor" of Petitioner's commitment offense in denying him parole. Although the "cruel" nature of Petitioner's commitment offense weighed heavily in the Board's determination, his "unstable social history" also counseled against parole. Petitioner's heightened tendency towards violence when he abused drugs and alcohol, in tandem with his relatively recent commitment to AA, led the Board to conclude that Petitioner had not "participated yet in sufficient levels of self-help to

9

ensure that he will remain clean and sober and to ensure that he will remain disciplinary free." (Resp't Ex. 2 at 54.) While the Board commended Petitioner on his recent attendance at AA meetings, the conclusion that he needed more exposure to self-help programming contributes to "some evidence" for denying him parole. (Id. at 55.)

The Ninth Circuit's evolving guidance in Biggs, Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1129 (9th Cir. 2006), and Irons v. Carey, No. 05-15275, slip op. 8335, 8344 (9th Cir. July 13, 2007), suggests that the Board can continue to evaluate static factors, including the nature of the commitment offense and pre-conviction criminality, as "some evidence" in deciding whether to grant parole. The weight to be attributed to those immutable events, however, should decrease as a predictor of future dangerousness as the years pass and the prisoner demonstrates favorable behavior. See Biggs, 334 F.3d at 916-17; Irons, slip op. at 8344. Should Petitioner continue to follow the Board's advice by attending self-help programming and maintaining a positive disciplinary record, continued parole denials based on Petitioner's commitment offense alone could eventually give rise to a due process violation. See Biggs, 334 F.3d at 916-17.

## II. Violation of the Plea Agreement

Petitioner claims that the Board's denial of parole violated the terms of his plea agreement because it was "based on facts associated with a dismissed charge" and deprived him "of his reciprocal benefit of lessened punishment," so that he is "serving a term for a higher degree of his plea stipulated crime." (Pet. at 13.) Petitioner alleges that the Board's breach of his plea

10

agreement violated his constitutional right to due process. Petitioner's due process claim is without merit.

Petitioner claims that his agreement to plead guilty to second-degree murder included an implication that future parole boards would evaluate his eligibility for parole based on "solely those facts which comport with the stipulated offense." (Pet. at 14.) Petitioner now alleges that the Board violated the terms of his plea agreement in denying him parole because it considered facts that did not comport with his conviction for second-degree murder. Petitioner takes particular issue with the letter from the Ventura County District Attorney, which in Petitioner's assessment "recharacteriz[ed] the crime as a first-degree execution style murder." (Id. at 9.) Because, Petitioner concludes, he "entered into his plea agreement under false premises . . . it can no longer stand." (Id. at 22.)

Plea agreements with specific promises are enforceable. See Santobello v. New York, 404 U.S. 257, 262 (1971) ("when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled"); Brown v. Poole, 337 F.3d 1155, 1161 (9th Cir. 2003). Should the government breach such a promise, the defendant can seek to withdraw from the plea agreement or demand specific performance. See United States v. Sandoval-Lopez, 122 F.3d 797, 800 (9th Cir. 1997). Petitioner presents no evidence, however, to show that his plea agreement included a promise that the parole board would evaluate his parole eligibility based solely on the stipulated offense of second-degree murder. Indeed, the record suggests that Petitioner was or should

11

have been aware that his plea to second-degree murder did not mean the facts surrounding dismissed counts could not be considered in future proceedings.

On July 21, 1982, the Ventura Country Superior Court accepted Petitioner's plea agreement, which called for a plea of no contest to second-degree murder with a gun use enhancement in exchange for dismissal of the other counts. During this session, Petitioner indicated he understood and agreed to the Harvey[2] waiver included in his plea agreement. The prosecutor described the waiver as follows:

> This is called a Harvey waiver. It says the defendant agrees that all the facts in the Information relating to any other counts and allegations of prior convictions and other sentence enhancement allegations which are dismissed as part of this plea can be included in the probation report and considered by the Court in determining the sentence.

(Resp't Ex. 4 at 4.)

Thus, the Court finds no promise in Petitioner's plea agreement that the government has refused to fulfill. See Santobello, 404 U.S. at 262. Petitioner's claim that he "entered into his plea agreement under false premises" is without merit. (Pet. at 22.)

Petitioner next claims that the Board's denial of parole has extended his term of imprisonment well beyond the "uniform term" for his commitment offense and that he is now serving "a term reserved for first-degree murder." (Id. at 9-10.) Petitioner alleges that the Board's denial of parole violated his plea agreement because he believed he would "serve the [uniform] term

---

[2] People v. Harvey, 25 Cal. 3d 754 (1979).

12

for the gravity of his crime and be released on parole."  (Id. at 11 [brackets in original].)

Petitioner cites People v. Collins, 21 Cal. 3d 208 (1978), among other authorities, for the proposition that an offender accepting a plea bargain is owed a reciprocal benefit of lessened punishment, in this case a "uniform term" of incarceration corresponding to Petitioner's commitment offense.  See Collins, 21 Cal. 3d at 214.  The courts have enforced plea agreements that included stipulated incarceration terms.  See, e.g., Brown, 337 F.3d at 1159-61 (government breached plea agreement to release defendant in seven and a half years if she did not violate prison disciplinary rules where defendant remained disciplinary-free and incarcerated for more than seventeen years).  Petitioner puts forth no evidence, however, to show that his plea agreement included a stipulation that he would serve a specific term, "uniform" or otherwise.  Rather, the record shows that during the July 21, 1982 plea colloquy, the prosecutor explicitly informed him that "the District Attorney is not making any sentence commitment. . . ." (Resp't Ex. 4 at 4.)  Petitioner voiced his assent to that element of his plea.  (Id.)  Petitioner now claims he believed the plea agreement included a stipulated, uniform term of incarceration, but the record does not support his recollection.

Petitioner was later sentenced to an indeterminate term of seventeen-years-to-life.  That Petitioner has now been incarcerated longer than seventeen years does not mean the Board's denial of parole either violated Petitioner's plea agreement or implicated his due process rights.  See Santobello, 404 U.S. at 262.

Petitioner has not shown that the Board's denial of parole

13

breached the terms of his plea agreement in violation of his right to due process. The California state courts' denial of Petitioner's claim was not contrary to, or an unreasonable application of, controlling federal law, nor based on an unreasonable determination of facts. See 28 U.S.C. § 2254(d). Petitioner is not entitled to federal habeas relief on his claim.[3]

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The Clerk of the Court shall enter judgment and close the file.

IT IS SO ORDERED.

Dated: 8/21/07

CLAUDIA WILKEN
United States District Judge

---

[3] Respondent also argues that Petitioner's plea agreement claim is untimely and barred under AEDPA's one year statute of limitations. Habeas petitioners have one year to challenge the decision of an administrative body, and that statue of limitations begins to run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Respondent argues that Petitioner is challenging the statement of facts from the 2005 parole hearing, which was first read into the record during Petitioner's 1991 parole hearing. Because Petitioner waited fourteen years to challenge the statement of facts, Respondent argues this claim is barred.
    The Court denies Petitioner's claim on the merits and does not address its timeliness.

14

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES BARNFIELD, | Case Number: CV06-00510 CW |
| Plaintiff, | **CERTIFICATE OF SERVICE** |
| v. | |
| A.P. KANE et al, | |
| Defendant. | |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on August 21, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

James K. Barnfield
CTF-Soledad
C-53123
P.O. Box 689
Soledad, CA 93960-0689

Jessica N. Blonien
Attorney General's Office
for the State of California
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550

Dated: August 21, 2007

Richard W. Wieking, Clerk
By: Sheilah Cahill, Deputy Clerk

15